United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE S. BAGLEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SUNNYVALE, et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-02250-JSC<br><br>**MOTION TO DISMISS**<br>Re: Dkt. No. 100 |

During an encounter with Sunnyvale police officers on December 21, 2012, Plaintiff Lee Scott Bagley was allegedly beaten by police officers and bitten by a police dog before being arrested and charged with resisting or deterring an officer. After entering a plea of no contest to the charge of resisting or deterring an officer, Plaintiff brought the underlying civil rights action against the City of Sunnyvale, County of Santa Clara, and the arresting police officers, alleging excessive force and *Monell* liability under 42 U.S.C. § 1983. Defendants now move to dismiss Plaintiff's Third Amended Complaint as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and for failure to state a claim. (Dkt. No. 100.) The Court DENIES Defendants' motion to dismiss as to the excessive force claim, and GRANTS the motion to dismiss as to the *Monell* claim.

**BACKGROUND**

**A.　Allegations of the Third Amended Complaint**

On December 21, 2012, Sunnyvale police officers arrived at Plaintiff's home to execute a bench warrant for making a false 911 call on October 1, 2012. (TAC ¶ 13.) When police officers arrived at Plaintiff's mobile home, he repeatedly told the officers that he was coming outside. (*Id.* ¶¶ 15, 18.) As Plaintiff prepared to come outside, one or more of the officers kicked in the door, drew their weapons, and pointed them at Plaintiff. (*Id.* ¶ 19.) Lieutenant Sartwell pointed his gun

at Plaintiff and instructed Officer Pistor to deploy his K9. (*Id.* ¶ 19.) At Officer Pistor's instructions, the K9 bit Plaintiff's arm. (*Id.* ¶ 22.) Officer Pistor subsequently punched Plaintiff between the nose and left eye with a closed fist, and then again in the face. (*Id.* ¶ 22.) Officers Kassel and Larkin held down Plaintiff's left arm and legs while Officer Pistor kicked Plaintiff's right ribs and Officer Lima kicked Plaintiff's face 50-60 times. (*Id.* ¶ 24, 27.) Officer Gotffred kneed Plaintiff's right side and struck Plaintiff two times with a closed fist. Throughout the confrontation, Officer Pistor's and Lieutenant Sartwell's gun remained pointed at Plaintiff. (*Id.* ¶ 25.) Supervisor Lieutenants Sartwell and Larkin did not order the officers to stop and instead participated in the attack. (*Id.* ¶ 29.)

The police officers subsequently instructed Plaintiff to go outside to the waiting ambulance. (*Id.* ¶ 30.) As Plaintiff walked to the ambulance, the officers threw him face-down on the steps of his home. (*Id.* ¶ 30.) Plaintiff was subsequently diagnosed with (1) right forearm and left upper arm wounds secondary to dog bite and (2) left maxillary, orbital floor, nasal bone, and zygomatic arch fractures post-trauma. (*Id.* ¶ 31.) At the hospital, 5-6 officers continued to harass Plaintiff until the doctors threatened to call the Mountain View police officers. (*Id.* ¶ 32.)

On January 2, 2013, Plaintiff was charged with a felony violation of California Penal Code Section 69, resisting or deterring an officer, and a misdemeanor violation of Section 148(a)(1), resting, delaying, or obstructing an officer. (Dkt. 100-1.) On June 19, 2015, Plaintiff pled no contest to the Section 69 count, which was reduced to a misdemeanor as a result of the negotiated plea. (*Id.* at 14.) On February 18, 2016, Plaintiff was sentenced to 30 days in county jail with credit for time served and ordered to pay fines and fees. (*Id.* at 24.)

**B. Procedural Background**

On April 25, 2016, Plaintiff filed his first complaint against the City of Sunnyvale, the County of Santa Clara, and officer Jeromy Lima (Dkt. No. 1.) Defendants Santa Clara County and Sunnyvale filed motions to dismiss, which were unopposed and granted on August 8, 2016. (Dkt. No. 31.) Plaintiff filed the First Amendment Complaint (FAC) on September 21, 2016 against the City of Sunnyvale, officer Jeromy Lima, and the County of Santa Clara for five causes of action: (1) unlawful entry and seizure, (2) excessive force, (3) unconstitutional policies, practices, or

procedures ("*Monell* claim"), (4) deliberate falsification of evidence ("*Devereaux* claim"), and (5) malicious prosecution. (Dkt. No. 38.) The court granted the Santa Clara Defendant's motion to dismiss with leave to amend, granted in part the Sunnyvale Defendant's motion to dismiss with leave to amend, and denied the motion as to the Plaintiff's excessive force claim. (Dkt. No. 56.)

Plaintiff filed the Second Amended Complaint (SAC) on March 14, 2017 alleging (1) excessive force, (2) *Devereaux* violations, and (3) a *Monell* claim against the City of Sunnyvale. (Dkt. No. 66.) In response to Defendants' motion to dismiss the SAC for failure to state a claim, the Court granted the motion with leave to amend the three claims, but dismissed the punitive damages claims against the City without leave to amend. (Dkt. No. 95.)

Plaintiff thereafter filed the operative Third Amended Complaint (TAC) against Defendant Officers Jeromy Lima, Daniel Pistor, Christopher Gottfred, Lieutenants Emmett Larkin and Timothy Sartwell, and the City of Sunnyvale alleging two claims: (1) excessive force as to the individual officer defendants, and (2) *Monell* liability as to the City. (Dkt. No. 99.) Defendants' motion to dismiss Plaintiff's TAC and accompanying request for judicial notice is now pending before the Court. (Dkt. Nos. 100, 100-1.)

**DISCUSSION**

**A.    Judicial Notice**

As a preliminary matter, the Court must decide what materials it will consider when determining whether the TAC survives Defendants' motion to dismiss, as the motion relies in part on materials outside the pleadings.

When considering a motion to dismiss, the court ordinarily does not look beyond the four corners of the complaint. *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). The court may take judicial notice of matters in the public record, however, which includes proceedings in other cases. *Id.* at 688–89; *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n. 2 (9th Cir. 2002) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (alteration and internal quotation marks omitted)); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may ... consider certain materials—documents attached to the complaint, documents incorporated

3

by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

Defendants request judicial notice of the following: (1) the Santa Clara District Attorney's Office felony complaint against Plaintiff following the incident; (2) the contents of the June 19, 2015 criminal court transcript which indicates Plaintiff entered a plea of No Contest to a misdemeanor violation of Penal Code Section 69; (3) the contents of court minutes from June 19, 2015, which indicate Plaintiff entered a no contest plea; (4) the transcript of court proceedings on February 18, 2016, which indicates Plaintiff was sentenced to 30 days in county jail with credit for time served and ordered to pay fines and fees; and (5) the court minutes for this same proceeding; Plaintiff filed an opposition to the request for judicial notice as to Exhibits 1, 2, 4, and 5. (Dkt. No. 105.) With their reply brief, Defendants also requested judicial notice of the police report of the incident (Exhibit 6). (Dkt. No. 106 at 3 n.1.)

Plaintiff opposes the request for judicial notice as to Exhibit 1, the Santa Clara Superior Court Felony Complaint filed on January 2, 2013, because he contends it is "subject to reasonable dispute." Exhibit 1 identifies Count 1 as violation of California Penal Code Section 69, a felony, and Count 2 as violation of Penal Code Section 148(a)(1), a misdemeanor. Since Plaintiff subsequently pled no contest to Section 69 as a misdemeanor, not a felony, and the Section 148(a)(1) charge was dropped, Plaintiff insists that Exhibit 1 does not accurately disclose the charges against Plaintiff. (Dkt. No. 105 at 4.) As the Court previously took judicial notice of the complaint in Santa Clara County Criminal Case, the Court grants judicial notice here. (Dkt. No. 56 at 2 n.2.)

The Court grants Defendants' request for judicial notice of Exhibit 2, the June 19, 2015

transcript of proceedings in Santa Clara County Superior Court. Plaintiff requests that the Court deny judicial notice because the transcript contains information regarding additional charges that are unrelated to the current proceedings. Yet, the transcript also contains Plaintiff's no contest plea to the Section 69 charge, which has a "direct relation to the matters at issue." See *Bennett*, 285 F.3d at 803 n.2 ("judicial notice of proceedings in other courts permissible if they have a direct relation to matters at issue" (internal quotation marks omitted)).

The Court grants judicial notice of Exhibits 4 and 5. Exhibits 4 and 5, the February 18, 2016 hearing transcript for Plaintiff's sentencing hearing and the court minutes, respectively, are matters of public record that are not subject to reasonable dispute. The documents are relevant to the charges arising from the December 21, 2012 incident. Plaintiff argues that the documents are prejudicial pursuant to Federal Rule of Evidence 403 because the documents contain information related to other charges against Plaintiff. (Dkt. No. 10 at 5.) Yet, Plaintiff's reliance on Rule 403 is misguided. There is a distinction between whether the Court may take judicial notice of a fact and whether that fact is admissible. *See, e.g., Integra Lifesciences I, Ltd. v. Merck KgaA*, 2000 WL 35717873, at *1 (S.D. Cal. Jan. 27, 2000) ("Before reaching questions of admissibility, the Court must first determine whether it should take judicial notice...."); *In re James,* 300 B.R. 890, 896 (Bankr. W.D. Tex. 2003) ("Judicial notice, while it may cure authentication, does not cure any customary objections involved in the admissibility of evidence, such as relevance, prejudice, or hearsay.").

Lastly, with their reply brief, Defendants submit the police reports from the underlying arrest. (Dkt. No. 106 at 3, n.1.) Exhibit 6 includes reports from nine police officers present during the December 21, 2012 incident at Plaintiff's home, but there is no accompanying declaration authenticating the documents. (Dkt No. 106 at 22-50.) Accordingly, these documents are inadmissible as unauthenticated under local rule 7-5. Civil L.R. 7-5(a).

The Court, therefore, grants judicial notice as to Exhibits 1, 2, 3, 4, and 5, and denies judicial notice as to Exhibit 6.

**B.     Motion to Dismiss**

**1)     Legal Standard**

5

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams,* 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64.

### 2) Plaintiff's Excessive Force (42 U.S.C. § 1983) Claim

For the reasons stated on the record at oral argument on October 26, 2017, the Court DENIES the motion to dismiss as to the excessive force claim.

### 3) Plaintiff's *Monell* Liability Claim

Under *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978), a municipality may be liable when a municipal policy causes an employee to violate another's constitutional right. A plaintiff can establish a *Monell* claim by: "(1) by showing a longstanding practice or custom which constitutes the standard procedure of the local governmental entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th

Cir. 2005). Absent a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* at 918; *see also Meehan v. Los Angeles County,* 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg,* 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy)).

To sufficiently plead a *Monell* claim, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff pleads two theories of *Monell* liability: (1) there is an official policy, custom, or practice of excessive force by the City's officers, and (2) a failure to train officers. The Court previously granted Plaintiff leave to amend Plaintiff's Second Amended Complaint to flush out these theories of liability and plead additional facts sufficient to show a custom or practice of excessive force regarding the use of K9s or a failure to train regarding the use of force and K9s. (Dkt. No. 95 at 2.) Plaintiff's TAC fails to do so.

### i. *Official policy, custom, or practice of excessive force*

A longstanding practice or custom is one that is so "persistent and widespread" that it constitutes a "permanent and well settled" governmental policy. *Trevino*, 99 F.3d at 918 (internal citations omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id*. (internal citations omitted). The line between "isolated or sporadic incidents" and "persistent widespread conduct" is not clearly delineated. *Lemus v. Cty. of Merced*, 2016 WL 2930523, at *4 (E.D. Cal. May 19,

7

2016), aff'd, 2017 WL 4772557 (9th Cir. 2017). The Ninth Circuit has found that one or two incidents of excessive force are inadequate to establish municipal liability. *See Davis*, 869 F.2d at 1233-34 (9th Cir. 1989) (single incident of excessive force inadequate to establish liability); *Meehan*, 856 F.2d at 107 (9th Cir. 1988) (two incidents insufficient).

Plaintiff has not alleged an official policy, custom, or practice of excessive force. In his SAC, Plaintiff alleged that he "personally knows of at least five or six people who were arrested and handcuffed by Sunnyvale police officers, and then bitten by police dogs." (Dkt. No. 66 ¶ 53.) The Court gave Plaintiff leave to amend to plead additional facts, but Plaintiff's allegations remain vague and insufficient. The TAC alleges one instance where police allegedly kicked Plaintiff's friend Mr. Brocous "before forcing the K9 dog to attack by biting [Mr. Brocous] while he was handcuffed." (TAC ¶ 46.) Plaintiff vaguely refers to one additional instance in which "a homeless person known to Plaintiff (but whose name Plaintiff does not know) was assaulted by a K9 dog after being handcuffed at Fair Oaks Park." (TAC ¶ 46.) These two instances fail to allege a policy of excessive force "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy[.]" *Trevino*, 99 F.3d at 918.

Plaintiff's vaguely described incidents of alleged excessive force are insufficient to plead municipal liability. In *Mendy v. City of Fremont*, the court dismissed plaintiff's *Monell* claim alleging that the city employed a policy that ignored police officers' misconduct because "allegations that several officers on a few occasions failed to conform their behavior to the adequate training they received is not sufficient to plead a municipal policy, practice or custom." *Mendy v. City of Fremont*, 2014 WL 1760226, at *3 (N.D. Cal. Apr. 2, 2014). Similarly, in *Wilkins v. City of Tempe*, the court found insufficient evidence to infer a municipal policy or practice of racial discrimination based on the filing of two lawsuits and forced retirement of one police officer in addition to allegations of two incidents in which police officers failed to arrest white men that fired guns in self-defense at black men but were not arrested. *Wilkins v. City of Tempe*, 2010 WL 94116, at *4 (D. Ariz. Jan. 6, 2010). The court concluded, "Assuming the truth of these allegations, they are insufficient to establish a policy of discrimination." *Id*; s*ee also*

*Henderson v. City & Cnty. of San Francisco*, 2006 WL 3507944, at * 10 (N.D. Cal. Dec. 1, 2006) (concluding that plaintiffs failed to demonstrate a triable issue of fact on *Monell* liability, despite alleging that defendant sheriff deputies had used excessive force on six separate occasions over a year long period and presenting evidence of 18 additional grievances submitted by other jail inmates reporting similar misconduct).

Plaintiff cites no cases suggesting that vague reports of two incidents are sufficient to deny a motion to dismiss a *Monell* claim. Where courts have allowed *Monell* claims to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of alleged violations. In *Motley v. Smith*, the court denied defendant's motion to dismiss the *Monell* claim because the complaint "pointed to multiple incidents suggesting the existence of a custom or practice" denying police protection to abused women because of their gender. *Motley v. Smith*, 2016 WL 3407658, at *9 (E.D. Cal. June 20, 2016). In *Motley*, plaintiffs alleged several incidents where police officers failed to follow protocol while conducting domestic violence investigations, including specific examples of officers failing to document injuries and treating injuries as self-inflicted. *Id*. Similarly, in *Nelson v. City of Los Angeles*, the court denied the motion to dismiss the *Monell* claim because the plaintiffs alleged more than eight specific instances in which jail guards retaliated against them for reporting misconduct in the jail, in violation of their First Amendment rights. *Nelson v. City of Los Angeles*, 2015 WL 1931714, at *10-11, 18 (C.D. Cal. Apr. 28, 2015). By contrast, two vaguely described incidents are insufficient to support a claim for municipal liability.

Moreover, Plaintiff attempts to establish *Monell* liability on the theory that "Sunnyvale had knowledge of the K9 dog attacks." (Dkt. N0. 104 at 19.) Plaintiff argues that "this knowledge is demonstrated at least because Defendant lieutenant police officers with supervisory authority over other officers, either participated directly in the wrongful use of the K9 police dog or did not attempt to intervene." *Id*.

For the City to have knowledge of the K9 attack, the "individual who committed the constitutional tort" must be "an official with final policy-making authority." *Trevino*, 99 F.3d at 920. Under some circumstances, the chief of police "may be considered the person possessing

9

final policy-making authority." *Id*. Plaintiff does not claim that police lieutenants, who allegedly failed to stop the K9 attack at Plaintiff's home on December 21, had final policymaking authority for the City, or that any action or inaction by police lieutenants constituted an official act of the City. Plaintiff only claims that Lieutenants Sartwell and Larkin "have supervisory authority" over the other officer defendants and failed to stop the attack from occurring. (TAC at ¶ 29.) Even if the lieutenants had "supervisory authority" over the other officers on scene, they were not "officers with final policymaking authority." *Trevino*, 99 F.3d at 920. In fact, Plaintiff claims that during the attack, "one of the officers holding him down told Lima to hurry up before a supervisor got here." (TAC at ¶ 24.) This allegation indicates that the officers were not acting pursuant to an order of "an official with final policymaking authority." *See Trevino*, 99 F.3d at 920. The TAC's unsupported conclusions and limited factual allegations fail to support a municipal liability claim based on a custom or practice of excessive force.

### ii.    Failure to train officers

A municipality may also be held liable under Section 1983 for constitutional violations resulting from its failure to train its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989) ("The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact.") Only where a failure to train reflects a "deliberate" or "conscious" choice by the municipality can the failure be properly thought of as an actionable city "policy." *Id. Monell* will not be satisfied by a mere allegation that a training program represents a policy for which the city is responsible. *Id.* Rather, the focus must be on whether the program is adequate to the tasks the particular employees must perform, and if it is not, on whether such inadequate training can justifiably be said to represent "city policy." *Id.* The identified deficiency in the training program must be closely related to the ultimate injury. *Id.* Thus, a plaintiff must still prove that the "deficiency in training actually caused the police officers' indifference." *Id.* Permitting "failure to train" cases to go forward on a lesser standard of fault would result in de facto respondeat superior liability on municipalities, which the Supreme Court rejected in *Monell.* 436 U.S. at 693–694. Furthermore, "That a particular officer may be

unsatisfactorily trained will not alone suffice. . . for the officer's shortcoming may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390.

Plaintiff's TAC states no facts as to the City's police training program and fails to plausibly allege any facts that give rise to a causal link between the training program and excessive force claim. Plaintiff alleges, "Sunnyvale police officers are inadequately trained because they do not receive adequate training as to the appropriate use of excessive force with respect to using K9 police dogs. This lack of training is made clear through the repeated wrongful use of K9 police dogs after arrestees are either handcuffed or not resisting." (TAC ¶ 64.) Plaintiff alleges that lieutenants witness "the wrongful uses of K9 police dogs" and "actually instruct officers to commit such wrongful conduct." (TAC ¶ 52.) These facts alone are insufficient. In order to survive a motion to dismiss, a *Monell* claim must "consist of more than mere formulaic recitations of the existence of unlawful policies, conducts or habits." *Anakin v. Contra Costa Reg'l Med. Ctr.*, 2016 WL 1059428, *3 (N.D. Cal. Mar. 17, 2016) (quoting *Bedford v. City of Hayward*, 2012 WL 4901434, *12 (N.D. Cal. Oct. 15, 2012)). Instead of alleging facts specific to the City's training program, the Plaintiff's allegations are limited to individual officers' on-site conduct in no more than three isolated instances, including the one at issue here. Thus, Plaintiff fails to plausibly plead a *Monell* claim.

## CONCLUSION

For the reasons stated on the record, the Court DENIES the motion to dismiss as to the excessive force claim and GRANTS the motion as to the *Monell* liability claim without further leave to amend at this time.

**IT IS SO ORDERED.**

Dated: November 3, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge